UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH PATRICIO,

    Plaintiff,

v().                                                                Case No: 8:22-cv-5-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff Kenneth Patricio seeks judicial review of the denial of his claim for supplemental security income (SSI). As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A. Procedural Background

Plaintiff filed an application for SSI on October 22, 2019. (Tr. 257–62.) The Commissioner denied Plaintiff's claim both initially and upon reconsideration. (Tr. 147–52, 154–56.) Plaintiff then requested an administrative hearing. (Tr. 43–90.) The ALJ held hearings in February and July of 2021. (Tr. 43-90.) Plaintiff appeared and testified at both hearings. (Tr. 43–90.) On August 5, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits. (Tr. 20–42.) Subsequently, Plaintiff requested review from the

Appeals Council, which the Appeals Council denied. (Tr. 4–8.) Plaintiff then timely filed a complaint with this court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1973, claimed disability beginning on October 22, 2019. (Tr. 47, 258–62.) Plaintiff has a general education diploma (GED) and no past relevant work. (Tr. 36, 68.) Plaintiff alleged disability due to necrotizing pancreatitis, malnutrition, anemia, chronic pancreatitis, pancreatic duct stricture, depression, congestive heart failure, diabetes, and breathing problems. (Tr. 284, 316.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since October 22, 2019, the application date. (Tr. 25.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, anxiety disorder, and depressive disorder. (Tr. 25.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27.) The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC)

> to perform light work as defined in 20 CFR 416.967(b) except he could no more than occasional climbing of ramps and stairs. The claimant could do no climbing of ladders, ropes, or scaffolds, and no more than occasional balancing, stooping, kneeling, crouching, and crawling. He must avoid all exposure to hazards. The claimant could perform simple and low-level detailed tasks; could tolerate no more

> than occasional contact with coworkers, supervisors, and the public; could tolerate no more than occasional changes in the work setting.

(Tr. 29.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully consistent with the medical evidence and other evidence of record. (Tr. 30.)

As noted, the ALJ determined that Plaintiff did not have any past relevant work. (Tr. 36.) Given Plaintiff's background and RFC, the vocational expert (VE) testified that Plaintiff could perform other jobs existing in significant numbers in the national economy such as a small parts assembler, electronics worker, and price marker. (Tr. 57–58.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 37.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or

psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff argues that the ALJ failed to comply with Social Security Ruling 00-4p because the ALJ did not resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT). (Dkt. 17 at 5.) *See* Soc. Sec. Admin., *Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4p (Dec. 4, 2000), *available at* 2000 WL

1898704 (hereinafter, SSR 00-4p). Specifically, Plaintiff argues that the VE's testimony that an individual with Plaintiff's RFC could perform the occupation of small parts assembler conflicts with the DOT's definition of the occupation. (Dkt. 17 at 8–9.) Plaintiff further argues that the ALJ erred in relying on the VE's testimony because the language used by the ALJ in examining the VE "is impermissibly vague, and there is no indication that there was a meeting of the minds between the ALJ and the [VE]." (*Id.* at 9–10.) Lastly, Plaintiff argues that the ALJ failed to include limitations in the RFC. (*Id.* at 10.) For the reasons that follow, Plaintiff's contentions do not warrant reversal.

When the ALJ determines that a claimant cannot perform or does not have past relevant work, the Commissioner must produce evidence that the claimant is able to perform other jobs existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.960(c). The burden then shifts to the claimant to show that the claimant "is unable to perform the jobs that the Commissioner lists." *Doughty v. Apfel*, 245 F.3d 1274, 1278, n.2 (11th Cir. 2001). "[T]he Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ must "introduce independent evidence, preferably through a [VE's] testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson*, 284 F.3d at 1227. "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones*, 190 F.3d at 1229. If a claimant

can perform other jobs existing in significant numbers in the national economy, then the claimant is not disabled. *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019).

Here, during the July 2021 hearing, the ALJ posed a hypothetical question to the VE containing all of Plaintiff's impairments and inquired whether that hypothetical individual could perform other jobs existing in the national economy. (Tr. 57.) The VE testified that an individual with Plaintiff's RFC would be able to perform work as a small parts assembler, electronics worker, and price marker. (Tr. 57–58.) The ALJ then invited Plaintiff's counsel to inquire of the VE. Counsel declined to ask any questions. (Tr. 58.) Based on the VE's testimony, the ALJ found at step five that Plaintiff can perform other work that exists in significant numbers in the national economy. (Tr. 37.)

SSR 00-4p requires an ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by" a VE and information in the DOT, "including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles" (SCO). SSR 00-4p at *1. In *Washington v. Comm'r of Soc. Sec.*, the Eleventh Circuit held that, pursuant to SSR 00-4p and the overall regulatory scheme governing disability claims, ALJs have "an affirmative duty to identify apparent conflicts between the testimony of a [VE] and the DOT and resolve them." 906 F.3d 1353, 1356 (11th Cir. 2018). An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. If a conflict is "reasonably

ascertainable or evident," the ALJ must identify the conflict, ask the VE about it, and resolve it in his or her decision. *Id.* at 1366; *Jules v. Berryhill*, No. 18-cv-60963-VALLE, 2019 WL 4737602, at *10 (S.D. Fla. Sept. 27, 2019). "The failure to discharge this duty means that the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence." *Washington*, 906 F.3d at 1356.

In *Christmas v. Comm'r of Soc. Sec.*, the Eleventh Circuit further held that SSR 00-4p and *Washington* do not require the ALJ "to draw inferences about job requirements that are unsupported by the DOT's text and then resolve conflicts between the VE's testimony and those unsupported inferences." 791 F. App'x 854, 857 (11th Cir. 2019). Thus, in evaluating whether a presented conflict is apparent, the court must compare the VE's testimony with the DOT to determine whether "an inference is required in order to find a conflict between the DOT and the VE's testimony." *Chavez-Fuentes v. Saul*, No. 1:18-cv-20765-JLK, 2020 WL 5646600, at *9 (S.D. Fla. Aug. 27, 2020), *report and recommendation adopted,* No. 18-20765-cv, 2020 WL 5644888 (S.D. Fla. Sept. 22, 2020) (finding a conflict existed because the DOT description required the plaintiff to lift twenty pounds, which he could not do with his left hand); *see Hewitt v. Saul*, No. 8:19-cv-83-T-SPF, 2020 WL 1181953, at *4 (M.D. Fla. Mar. 12, 2020) ("However, no apparent conflict arises between the DOT and a VE's testimony when the VE's testimony addresses job requirements unsupported by the DOT's text.").

Here, Plaintiff argues that an apparent conflict exists between the VE's testimony and the DOT's definition of a small products assembler. Specifically, Plaintiff contends that despite an RFC finding that he could tolerate no more than

occasional contact with coworkers, supervisors, and the public and no more than occasional change in the workplace, the DOT's definition of a small products assembler includes tasks that "appear to exceed both of the relevant parameters cited above" such as: "[f]requently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker" and "[m]ay be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor." (Dkt. 17 at 8–9.) For the reasons discussed below, Plaintiff's contentions are without merit.

First, although the DOT's definition for a small products assembler includes the tasks noted above, which Plaintiff alleges conflict with his assessed RFC, those tasks are not necessarily required to be performed by someone in the small products assembler position. For example, the DOT describes the occupation of small products assembler as someone who, in part:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift

>       from one station to another to reduce fatigue factor.  May
>       be known according to product assembled.

DOT 706.684-022, Assembler, Small Products I, 1991 WL 679050.  This description provided by the DOT, however, is permissive, as it begins by reciting that it is a position which "[p]erforms any combination of the following tasks . . . ."  *Id.*  As such, there is nothing to suggest that the DOT description of small products assembler, as generally performed, conflicts with the VE's testimony.  *See Christmas*, 791 F. App'x 854, 857 (11th Cir. 2019) (finding that, though the VE acknowledged the claimant's limitation, she could not communicate frequently with others, there was no apparent conflict with the DOT because the DOT description did not contain specific communication requirements); *see also Mataraza v. Astrue*, No. 1:11CV1787, 2012 WL 5996072, at *11 (N.D. Ohio Nov. 7, 2012) ("And while the job of wire worker in the DOT discusses the use of soldering equipment, which Plaintiff contends is dangerous and thus is also precluded by his RFC, the description does not indicate that soldering is required in every instance of a wire worker's job, as it states that a wire worker '[p]erforms any combination of following tasks involved in cutting, stripping, taping, forming, and soldering wires or wire leads.'") (citation omitted); *Gleason v. Astrue*, No. EDCV 12-649-MLG, 2012 WL 4356244, at *5 (C.D. Cal. Sept. 21, 2012) ("[T]he DOT description for both kitchen helper and packer state that workers perform 'any combination' of the tasks listed, but do not state that a worker is required to perform all of them.  Both job descriptions include multiple tasks that do not involve the use of a machine.") (internal citations omitted); *Dumble v. Astrue*, No. EDCV 11-266-OP,

2011 WL 4502086, at *6 (C.D. Cal. Sept. 28, 2011) ("[A]lthough the job description states that a hand packager performs 'any combination' of the tasks listed in the DOT, it does not state that a worker is required to perform all of them."); *Wafford v. Comm'r of Soc. Sec.*, No. 1:09-cv-00805, 2010 WL 5421303, at *5 (S.D. Ohio Aug. 19, 2010) ("[P]laintiff contends that some of the jobs would involve hazardous machinery or would expose him to unprotected heights, but that is not supported by the DOT. Some DOT listings describe machinery used in the process, but also provide that a worker may perform any combination of a long list of tasks, meaning that plaintiff could perform tasks that do not involve any hazardous machinery. Thus, the VE did not necessarily contradict the DOT listings, but instead provided more specific job information."). Therefore, there was no conflict between the VE's testimony and the DOT for the ALJ to resolve pursuant to SSR 00-4p. *See Christmas*, 791 F. App'x at 857.

Moreover, even assuming such a conflict existed and the ALJ failed to resolve it, any such error would be harmless. Plaintiff raises this argument only with respect to the small products assembler position. Plaintiff does not argue a conflict existed between the VE's testimony and the DOT descriptions for electronics worker or price marker. The VE testified that 18,000 electronics worker jobs existed in the national economy and 162,000 price marker jobs existed as well. (Tr. 57–58.) This testimony constitutes substantial evidence to support the ALJ's step five determination. *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 934, 934–35 (11th Cir. 2015); *Champion v. Saul*, No. 3:18-cv-1487-J-JRK, 2020 WL 1329984, at *6 (M.D. Fla. Mar. 23, 2020) (holding

that if one occupation "carries sufficient positions available in the national economy, it alone is enough upon which the ALJ's step five findings could be upheld").[1]

Second, Plaintiff argues "that the ALJ's usage of the phrase 'occasional contact with coworkers, supervisors, and the public' is impermissibly vague, and there is no indication that there was a meeting of the minds between the ALJ and the [VE]." (Dkt. 17 at 9.) Specifically, Plaintiff takes issue with the ALJ's usage of the word "contact," contending that "in the age of COVID" the term means physical distancing or actual superficial contact. (*Id.*) This basis for remand, however, is without merit. During the hearing, the ALJ asked the VE to consider a hypothetical person of the same age, education, and past work experience as Plaintiff with all of Plaintiff's limitations reflected in the RFC. (Tr. 57.) As part of the hypothetical, the ALJ included the limitation that the hypothetical individual could have "no more than occasional contact with coworkers, supervisors, and the public." (Tr. 57.) In response, the VE testified that although this hypothetical individual could not perform any of Plaintiff's past work, he could perform the jobs of small parts assembler, DOT number 706.684-022, electronics worker, DOT number 729.687-010, and price marker, DOT number 209.587-034. (Tr. 57.)

---

[1] To the extent Plaintiff contends SSR 00-4p requires the ALJ to resolve "any conflict," that contention has previously been rejected by courts in this circuit. *See Mccutcheon v. Comm'r of Soc. Sec.*, No. 8:19-cv-3023-T-MAP, 2021 WL 268197, at *3 (M.D. Fla. Jan. 27, 2021) (noting that "Plaintiff's argument conflates the ALJ's duty to resolve conflicts between the VE's testimony and the DOT, recognized in *Washington*, into a duty to resolve *any* conflict. The holding in *Washington* does not stretch that far.").

Plaintiff argues that if the ALJ intended for contact to mean physical distancing, without any interaction, "there should have been some inquiry as to the common degree of separation of work-stations normally found in these occupations." (Dkt. 17 at 9.) Notwithstanding Plaintiff's contention, there is no indication in the record that the VE did not understand the limitation, "no more than occasional contact with coworkers, supervisors, and the public," to accommodate Plaintiff's anxiety. (Tr. 57); *see* (Tr. 29, 35–36.) Indeed, the record demonstrates that the VE did not ask for clarification, seek additional guidance, or show any uncertainty. (Tr. 57–58.) "Courts in this circuit routinely reject the argument that the limitation is vague where, as here, there is no indication that either the ALJ or the VE misunderstood its plain meaning." *Thomas v. Comm'r of Soc. Sec.*, No. 3:19-cv-620-J-PDB, 2020 WL 5810219, at *4 (M.D. Fla. Sept. 30, 2020) (collecting cases). Moreover, Plaintiff's counsel failed to present any conflicts or demonstrate confusion with the term through cross-examination, indicating there was no apparent misunderstanding on the issue. *See Teague v. Comm'r of Soc. Sec.*, 743 F. App'x 410, 412 (11th Cir. 2018) ("At her hearing before the administrative law judge, Teague challenged neither the hypothetical question posed to the vocational expert nor the expert's testimony that she could perform the jobs of parking lot cashier, hand packager, and bagger."); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 879 (11th Cir. 2013) ("Denomme's representative failed to ask whether her ability to perform these jobs would be compromised by limitations in interacting with coworkers and supervisors, and he posed no other mental limitations questions to the VE."); *Pena v. Saul*, No. 8:19-cv-2122-T-TGW, 2020 WL 5525628, at

*3 (M.D. Fla. Sept. 15, 2020); *Phillips v. Colvin*, No. 8:13-cv-1382-T-EAJ, 2014 WL 12629789, at *3 (M.D. Fla. July 15, 2014); *Sterling v. Comm'r of Soc. Sec.*, No. 06-1868, 2008 WL 594503, at *5 (W.D. La. Feb. 3, 2008) (affirming ALJ's reliance on VE's testimony as consistent with the DOT because, among other reasons, claimant's counsel "did not cross-examine the expert concerning any purported discrepancies in her testimony"). Thus, the court finds that the ALJ posed a complete hypothetical to the VE and the VE's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff was not disabled.

Lastly, Plaintiff points to a finding from state agency psychological consultant, Dr. Lee Blackmon, that Plaintiff "may benefit from his own work area." (Dkt. 17 at 10.) Plaintiff appears to argue that it was error for the ALJ to fail to include this finding in the RFC despite deeming Dr. Blackmon's opinion persuasive. (*Id.*)

As an initial matter, to the extent Plaintiff is challenging the ALJ's RFC formulation and failure to include additional limitations in the RFC, this assertion is waived because Plaintiff failed to develop the argument. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (noting that the plaintiff listed an issue in his brief but "waived this issue because he did not elaborate on this claim or provide citation to authority about this claim"); *Jackson v. Comm'r of Soc. Sec.*, No. 6:19-cv-529-Orl-EJK, 2020 WL 5835078, at *8 (M.D. Fla. Oct. 1, 2020) ("[T]he Court construes Plaintiff to have waived this argument due to his failure to elaborate on it further."); *Curtis v. Saul*, No. 8:19-cv-177-T-CPT, 2020 WL 1271061, at *3 (M.D. Fla. Mar. 17, 2020) ("As an

initial matter, the Plaintiff's argument—which consists of three sentences—is perfunctory, lacking in any meaningful analysis, and therefore waived.").

In any event, Plaintiff's final contention is without merit as the ALJ did not err in formulating Plaintiff's RFC. "The residual functional capacity is an assessment, based upon all relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources. 20 C.F.R. § 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

Here, despite Plaintiff's perfunctory argument, the ALJ was not required to adopt any portion of Dr. Blackmon's findings when evaluating Plaintiff's RFC. *See* 20 C.F.R. § 416.946(c). That is because the regulations governing Plaintiff's case further state that the Commissioner "*will not defer* or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (emphasis added). *See also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019) (noting that an ALJ's RFC assessment does "not need to match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ"). Moreover, courts have concluded that while an ALJ

may find prior medical opinions and administrative medical findings persuasive, the ALJ is not required to adopt every part of the opinion in a plaintiff's RFC findings. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022); *Massicotte v. Comm'r of Soc. Sec.*, No. 8:20-cv-2923-MAP, 2022 WL 2663406, at *5 (M.D. Fla. July 11, 2022); *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-cv-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021). Here, the record demonstrates that the ALJ considered Dr. Blackmon's opinions and findings and, as a result, included multiple limitations in the RFC to account for Plaintiff's anxiety. (Tr. 29.) The ALJ limited Plaintiff to simple and low-level detailed tasks and found that he could tolerate no more than occasional contact with coworkers, supervisors, and the public, and could tolerate no more than occasional changes in the work setting. (Tr. 29.) Plaintiff has not made any showing that the RFC formulation is not supported by substantial evidence.

In sum, the record provides substantial evidence for the ALJ's determination that Plaintiff was not disabled. *Bloodsworth*, 703 F.2d at 1239 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."); *see Phillips*, 357 F.3d at 1240 n.8 ("Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.") (punctuation and citation omitted).

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on January 10, 2023.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record